# **EXHIBIT A**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES E. SHELTON, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Case No. 2:26-cv-00001 |
| v. | HON. JOHN M. YOUNGE |
| EVERQUOTE, INC. | |
| *Defendant.* | |

### DECLARATION OF MADELINE CONTOIS IN SUPPORT OF DEFENDANT EVERQUOTE, INC.'S MOTION TO COMPEL ARBITRATION

I, Madeline Contois, declare and state as follows:

1. I am over the age of eighteen and am competent to make this declaration. I submit this declaration in support of Defendant EverQuote, Inc.'s ("EverQuote") Motion to Compel Arbitration.

2. I am currently employed by EverQuote as the VP, Performance Marketing. In my capacity as VP, Performance Marketing, I am familiar with the internal operations of EverQuote's websites, including the website auto.provide-insurance.com (the "Website").

3. I am also familiar with EverQuote's data collection, lead generation processes, and internal databases.

4. The information set forth in this declaration is based on my own personal knowledge, my review of EverQuote's internal databases and business records, and my understanding of the systems used to create and maintain those records.

5. If called as a witness in this matter, I could and would competently testify to the facts set forth herein.

6. The Website, auto.provide-insurance.com, is owned and operated by EverQuote.

7. When a consumer visits the Website and submits a request for an insurance quote, the data they enter, along with metadata regarding their visit (such as the date, time, and IP address), is securely captured and maintained directly within EverQuote's internal databases.

8. These records are created at or near the time of the consumer's interaction with the Website by, or from information transmitted by, a person with knowledge. These records are kept in the course of EverQuote's regularly conducted business activities, and it is the regular practice of EverQuote to make and maintain such records.

9. I have reviewed EverQuote's internal business records regarding Plaintiff James E. Shelton. Those records definitively establish that on October 7, 2025, Plaintiff visited the Website and affirmatively requested auto insurance quotes.

10. While on the Website on October 7, 2025, Plaintiff entered identifying information into the Website's online form. Specifically, Plaintiff entered his first name ("James"), his last name ("Shelton"), his personal email address, his Pennsylvania residential address, and his phone number ending in 3942.

11. The Website on October 7, 2025 presented with a clear and conspicuous disclosure regarding the Website's terms as shown below:



2

12. The above image is a true and accurate representation of the Website's disclosure on October 7, 2025.

13. To complete his transaction, Plaintiff was required to click a prominent orange button labeled "Get My Quotes."

14. Located directly below the "Get My Quotes" button was a clear, unambiguous disclosure. At the time of Plaintiff's visit, this disclosure stated exactly as follows:

> "By clicking Get My Quotes and submitting this form, I am providing express written consent to being contacted by you, EverQuote Marketing Partners, or by one or more agents or brokers of your partners which companies I agree may reach me to discuss my interest, including offers of insurance, at the phone number and/or email address I have provided to you in submitting this form and/or additional information obtained. I consent by electronic signature to being contacted by telephone (via call and/or text) for marketing/telemarketing purposes at the phone number I provided in this form, even if my phone number is listed on a Do Not Call Registry, and I agree that such contact may be made using an automatic telephone dialing system and/or an artificial or prerecorded voice (standard call, text message, and data rates apply). I can revoke my consent at any time. I also understand that my agreement to be contacted is not a condition of purchasing any property, goods or services, and that I may call 1-855-840-1737 to speak with someone about obtaining an insurance quote. By clicking Get My Quotes and submitting this form, I affirm that I have read and agree to this website's Privacy Policy and Terms of Use, including the arbitration provision and the E-SIGN Consent."

15. EverQuote uses a "clickwrap" agreement format. As clearly stated in the text above, by clicking the "Get My Quotes" button, the user objectively manifests their assent to the Website's Terms of Use, which explicitly includes binding arbitration.

16. Within the disclosure text, the phrases "Privacy Policy," "Terms of Use," and "E-SIGN Consent" were hyperlinked. These hyperlinks were prominently underlined and highlighted in a bright blue font, deliberately distinguishing them from the surrounding text to signal their nature as clickable links.

17. EverQuote's internal records confirm that Plaintiff voluntarily entered his information, was presented with this disclosure, and clicked the "Get My Quotes" button on October 7, 2025. Without Plaintiff taking these specific actions, EverQuote's system would not have obtained

3

his phone number or consent to be contacted.

18. Attached hereto as Exhibit B is a true and correct copy of EverQuote's Terms of Use that were in effect on the Website on October 7, 2025, and which were linked directly in the disclosure Plaintiff accepted.

19. Section 2 of the Terms of Use contains a mandatory, binding Arbitration Agreement. It states in relevant part:

> "PLEASE READ THIS CAREFULLY. IT AFFECTS YOUR RIGHTS. You agree to attempt in good faith to settle any dispute or claim that has or may arise between us, which arises out of or relates in any way to these Terms or your use of the Site or the Content, including, without limitation, any dispute or claim between you and a Provider (each, a "Claim")…You agree to arbitrate all Claims between you and us, or any Provider, that cannot be amicably resolved in accordance with the foregoing paragraph. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to: (a) claims arising out of or relating to any aspect of your relationship with us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; and (b) claims that could be alleged as class action Claims (and you agree to waive the right to participate in a class action in accordance with this Section 2)…You agree that, by entering into this arbitration agreement, you and we are each waiving our respective rights to a trial by jury or to participate in a class or representative action, and that arbitration of disputes pursuant to this Section 2 shall be in your individual capacity. THIS MEANS YOU ARE LIMITING YOUR RIGHT TO APPEAL AND ARE WAIVING YOUR RIGHTS TO OTHER AVAILABLE RESOLUTION PROCESSES, SUCH AS A COURT ACTION…
> The arbitration will be governed by the American Arbitration Association ("AAA") under its then-prevailing rules and procedures… The arbitrator is bound by the terms of this Agreement and shall apply Delaware law consistent with the Federal Arbitration Act and applicable statutes of limitations, and shall honor claims of privilege recognized at law. All issues are for the arbitrator to decide, including, without limitation, issues relating to the applicability and enforceability of this arbitration agreement…
> DO NOT USE THIS SITE IF YOU DO NOT AGREE TO THE FOREGOING BINDING ARBITRATION PROVISIONS."

20. Furthermore, the Terms of Use contain a Class Action Waiver, which states: "THE ARBITRATOR MAY NOT CONSOLIDATE, COMBINE, OR JOIN THE CLAIMS OF OTHER PARTIES WHO MAY BE SIMILARLY SITUATED OR OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING."

21. Exhibit B is a true and accurate representation of the "Terms of Use" page that was linked to the "Terms of Use" hyperlink on the Website's Disclosure on October 7, 2025.

4

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this __26__ day of February, 2026, in __Boston__, __Massachusetts__.

*Signed by:*
*Madeline Contois*

Madeline Contois
EverQuote, Inc.

5