IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES E. SHELTON, individually and on behalf of all others similarly situated,<br><br>   *Plaintiff*,<br><br>v.<br><br>EVERQUOTE, INC.<br><br>   *Defendant.* | Case No. 2:26-cv-00001<br><br>HON. JOHN M. YOUNGE |

**DEFENDANT EVERQUOTE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1)**

   Defendant EverQuote, Inc. ("EverQuote"), by and through its undersigned counsel, respectfully moves this Court to dismiss Count II of Plaintiff James E. Shelton's ("Plaintiff") Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

**I. INTRODUCTION**

   Count II of Plaintiff's Complaint fails the most basic requirements of federal jurisdiction: injury-in-fact and causation. Plaintiff alleges that EverQuote violated 47 C.F.R. § 64.1601(e)(1) by failing to transmit a Caller ID Name ("CNAM") for its text messages. Yet a fatal flaw exists on the very face of his pleadings. Plaintiff completely fails to allege that he took the necessary, prerequisite steps required to actually receive CNAM information in the first place.

   By Plaintiff's own admission, the device at issue is a "cellular service." Complaint ("Compl.") at ¶ 20. As a matter of indisputable telecommunications technology—expressly confirmed by the public documentation of Twilio Inc. ("Twilio"), the very carrier platform

Plaintiff bases his claim upon—mobile CNAM display is strictly an opt-in feature. Compl. at ¶¶ 25-27; Twilio Inc., *Twilio Docs, Brand you calls using CNAM*, https://www.twilio.com/docs/voice/brand-your-calls-using-cnam (last visited Feb. 22, 2026) (cited throughout brief as the "Twilio CNAM Webpage"). *See* Declaration of V. Amanda Witts (attached to this filing as Exhibit A) Twilio's platform rules are unequivocal: "If the recipient doesn't enable CNAM for their mobile phone, CNAM won't be displayed even if a CNAM is properly set." *See* Twilio CNAM Webpage.

Because Plaintiff's pleadings are entirely devoid of any allegation that he affirmatively contacted his mobile carrier to opt into or enable the CNAM feature, he has pled himself out of court on two distinct Article III grounds. First, Plaintiff cannot establish a concrete injury-in-fact. A statutory violation only becomes an Article III injury if it actually affects the plaintiff in the real world. Because Plaintiff never alleged his phone was never configured to display CNAM data, EverQuote's alleged failure to populate a backend database caused him no concrete, real-world harm. Had EverQuote perfectly populated the database, Plaintiff's phone screen would have looked exactly the same.

Second, Plaintiff fails to establish causation. Even if Plaintiff suffered some abstract annoyance at not knowing who was texting him, that grievance may be traceable to his own failure to opt into his carrier's CNAM feature, not to EverQuote's actions or inactions. The causal chain between EverQuote's alleged statutory violation and Plaintiff's real world experience has not been established.

At bottom, a bare procedural violation completely divorced from concrete, traceable harm cannot survive a Rule 12(b)(1) jurisdictional challenge. Because Plaintiff's pleadings fail to establish that he did what was required to actually receive the display, Count II must be dismissed.

## II.   FACTUAL BACKGROUND

Count II of Plaintiff's complaint alleges that EverQuote sent telemarketing text messages to his phone without transmitting an accurate CNAM in violation of 47 C.F.R. § 64.1601(e). Compl. at ¶¶ 25-27, 51-57. Plaintiff also alleges that his telephone number at issue is a "cellular service." *Id*. at ¶ 20.

Plaintiff alleges that Twilio "provides its customers the ability to set the CNAM result accurately to reflect their own name as desired." *Id.* at ¶ 27. However, Plaintiff alleges that EverQuote did not elect a CNAM to accurately reflect its own name, resulting in the default transmission of the "geographic location of the telephone exchange for the calling telephone number" rather than EverQuote's name. *Id*. at ¶¶ 26-27.

Based entirely on this alleged technical backend omission, Plaintiff claims that he and the putative class suffered harm. *Id*. at ¶ 36. Specifically, Plaintiff alleges their "privacy has been violated and they were annoyed and harassed," and that the messages occupied their "telephone lines, storage space, and bandwidth." *Id*.

However, Twilio's own public technical documentation, CNAM delivery is not automatic for cellular services. *See* Twilio CNAM Webpage's section titled "Eligibility." Twilio explicitly states that "CNAM is displayed only if the recipient has enabled the CNAM feature on their phone through their carrier." *Id*. Furthermore, Twilio's documentation clarifies that "[f]or mobile phones, most US carriers offer CNAM as an opt-in feature," and expressly warns that "[i]f the recipient doesn't enable CNAM for their mobile phone, CNAM won't be displayed even if a CNAM is properly set." *Id*. An exact excerpt of the relevant portion of the Twilio CNAM Webpage is below:

> **Eligibility**
>
> - Looking up or changing CNAM is available only for US phone numbers.
> - Your Business Profile must be associated with an Employer Identification Number (EIN) or a Data Universal Numbering System (DUNS) number.
> - CNAM is displayed only if the recipient has enabled the CNAM feature on their phone through their carrier.
>   - For landlines, CNAM is enabled by default.
>   - For mobile phones, most US carriers offer CNAM as an opt-in feature. If the recipient doesn't enable CNAM for their mobile phone, CNAM won't be displayed even if a CNAM is properly set for the number.
>
> ⓘ **CNAM display depends on the recipient's carrier**
> CNAM display depends on the recipient's carrier. Twilio keeps its CNAM Line Information Databases (LIDB) up to date with the correct CNAM values. However, not all carriers subscribe to every CNAM database, and Twilio can't control how carriers or database providers manage or update their records.

*Id*.

EverQuote in its declaration attached hereto confirms that Twilio is its telecommunications provider to route and transmit text messages to consumers, and if a consumer has a cellular service and has not affirmatively opted into or enabled the CNAM feature through their specific mobile carrier, Twilio's platform will not display the CNAM data to that consumer, regardless of whether EverQuote populates the CNAM information in Twilio's backend database. *See generally* Declaration of Madeline Contois (attached to this filing as Exhibit B).

### III.   LEGAL STANDARD

The Federal Rule of Civil Procedure 12(b)(1) provides that a complaint is properly dismissed when a court lacks subject-matter jurisdiction. In this regard, Article III of the U.S. Constitution confers on the federal judiciary, the power to adjudicate certain cases and controversies. "A motion to dismiss for want of standing is...properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citations omitted). "[T]he standing inquiry...focus[s] on whether the party

invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000)). "To establish that stake, a plaintiff must show three elements: injury-in-fact, causation, and redressability." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014). The Supreme Court defined these three elements as follows:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'"…Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted).

The burden to prove these jurisdictional elements rests entirely on the plaintiff as the party seeking federal jurisdiction. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). When a case is challenged at the pleading stage, the plaintiff must provide clear factual allegations demonstrating that every element of standing is satisfied. *Id*. "The plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014)

In addressing a 12(b)(1) motion a district court must first determine whether the motion presents a "facial" attack or a "factual" attack on the claim at issue, because that distinction determines how the pleading must be reviewed. *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)). A factual attack may be supported by evidence and declarations. *Const. Party of*

5

*Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (("[T]he trial court is free to weigh the evidence...and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."). In sum, a facial attack "contests the sufficiency of the pleadings," *In re Schering Plough Corp.*, 678 F.3d at 243, "whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." *CNA v. United States*, 535 F.3d 132, 139 (3d Cir.2008) (internal quotation marks omitted) (alterations in original)).

"Once a defendant challenges a court's subject matter jurisdiction, the burden shifts to the plaintiff to establish a foundation for jurisdiction by a preponderance of the evidence." *Holdcraft v. Town of Brookfield*, 365 F. Supp. 3d 190, 195 (D. Mass. 2019) (citing *Padilla-Mangual v. Pavia Hosp.*, 516 F.3d 29, 31 (1st Cir. 2008); *Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir. 1996)).

IV.  **ARGUMENT**

**A. Plaintiff Lacks Article III Standing Because He Suffered No Concrete Injury Traceable to EverQuote's Alleged Conduct.**

Article III of the Constitution limits the jurisdiction of federal courts to actual "Cases" and "Controversies." U.S. Const. art. 3, § 2, cl. 1. To satisfy this requirement, a plaintiff must establish standing by demonstrating (1) an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan*, 504 U.S. at 560–61. Here, Count II fails on the first two prongs. Because Plaintiff never alleged his phone was configured to receive the CNAM information he claims EverQuote failed to transmit, he suffered no concrete injury-in-fact, and any abstract grievance he holds is entirely untraceable to EverQuote's conduct.

### 1. Plaintiff Suffered No Concrete Injury-In-Fact.

The Supreme Court has made it abundantly clear that Article III requires a "concrete and particularized" injury that actually exists in the real world. *Spokeo,* 578 U.S. at 339 ("To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'") (citing *Lujan*, 504 U.S. at 560). A plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 341 (citations omitted).

In Count II, Plaintiff alleges a pure procedural violation of 47 C.F.R. § 64.1601(e)(1), claiming EverQuote failed to transmit its Caller ID Name via Twilio. Compl. at ¶¶ 25-27. However, the technical reality of the very platform Plaintiff relies upon eviscerates any claim of concrete harm. Plaintiff admits his phone is a "cellular service." Compl. at ¶ 20. As established by Twilio's public technical specifications, mobile CNAM is exclusively an opt-in feature. *See* Twilio CNAM Webpage's section titled "Eligibility." If a mobile user does not actively enable the feature with their carrier, "CNAM won't be displayed even if a CNAM is properly set." *Id.*

Nowhere in the Complaint does Plaintiff allege that he affirmatively opted into or enabled this CNAM feature on his cellular device. Because it is Plaintiff's burden to clearly allege facts demonstrating an injury, his failure to plead this essential technological prerequisite is fatal. Without alleging that his phone was actually configured to receive and display CNAM data, Plaintiff has failed to plead that EverQuote's alleged failure to populate Twilio's database impacted his real-world experience in any way. Based on the face of the pleadings, even if EverQuote had perfectly complied with the regulation and transmitted its CNAM precisely as Plaintiff demands, there are no facts pled to suggest Plaintiff's phone screen would have looked

any different. Consequently, Plaintiff has alleged nothing more than an abstract technical omission. The Supreme Court has expressly rejected such claims, holding that a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo,* 578 U.S. at 341.

As such, Count II may be properly dismissed pursuant to Rule 12(b)(1).

### 2. Any Alleged Harm Is Not Traceable to EverQuote.

Even if this Court were to accept Plaintiff's conclusory allegation that he was "annoyed and harassed" by not knowing who was texting him, Compl. at ¶ 36, Plaintiff still lacks standing because that annoyance is not traceable to EverQuote's actions.

Causation for Article III standing requires that the injury-in-fact be "fairly traceable" to the defendant's conduct. *Waterman v. Paychex, Inc.,* No. 25-CV-2908, 2025 WL 2983161, at *6–7 (E.D. Pa. Oct. 22, 2025) (granting the defendant's motion to dismiss because the plaintiff "failed to allege a causal connection as required for standing"). To satisfy this element, a plaintiff must allege "a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe, New Mexico*, 993 F.3d 802, 814 (10th Cir. 2021) (quoting *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005)). If the complained-of injury would have occurred regardless of the defendant's actions, traceability is absent. *See Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 42 (1976) (traceability lacking where injury "results from the independent action of some third party not before the court"); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1272 (11th Cir. 2019) ("a plaintiff lacks standing to challenge a rule if an independent source would have caused him to suffer the same injury"); *Luckau v. Sunrun, Inc.*, No. 25-cv-01661-JST, 2025 WL 2780784, at *2 (N.D. Cal. Sept. 30, 2025) (dismissing TCPA caller identification claim for lack of traceability where plaintiff never requested to be placed on

8

defendant's internal do-not-call list and thus defendant's compliance with the regulation would not have prevented calls to plaintiff).

Similarly, a plaintiff cannot establish traceability where the alleged injury is self-inflicted, that is, where it results from the plaintiff's own independent choices rather than the defendant's challenged conduct. *See Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (holding injuries self-inflicted where plaintiff states' own voluntary tax credit decisions, not defendant states' taxes, caused their fiscal harm); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (parties "cannot manufacture standing merely by inflicting harm on themselves"); *Nat'l Fam. Plan. & Reprod. Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) (injury self-inflicted where plaintiff chose not to exercise available right to petition agency for clarifying rule); *UMG Recordings, Inc. v. RCN Telecom Servs., LLC*, No. 19-17272, 2022 WL 1291388, at *4 (D.N.J. Apr. 29, 2022) (costs stemming from plaintiffs' own self-selected policy requirements were self-inflicted and insufficient to confer standing).

Here, traceability fails entirely due to Plaintiff's deficient pleadings. To trace his alleged harm—the inability to see EverQuote's name on his caller ID—to EverQuote's settings, Plaintiff must first allege that his cellular device was actually set up to receive and display that information. He has not done so. Because Plaintiff fails to allege that he affirmatively opted into or enabled the CNAM feature on his phone, he has not pled the necessary facts to connect EverQuote's conduct to his experience. Without an explicit allegation that his phone was configured to show CNAM data, there are no facts to support a "substantial likelihood" that EverQuote's actions actually caused the alleged harm. Based on the face of the Complaint, the lack of Caller ID information is just as easily traceable to Plaintiff's own failure to enable the feature. Because Plaintiff failed to allege that he had his phone set to show the information, the necessary causal link to EverQuote's

9

conduct is completely absent.

**C.      The Court Should Take Judicial Notice of Twilio's Technical Specifications, Which Are Integral to Plaintiff's Complaint.**

Federal Rule of Evidence 201(b) establishes that a court may judicially notice a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Hasson v. FullStory, Inc.*, No. 2:22-CV-1246, 2023 WL 4727619, at *1 (W.D. Pa. July 25, 2023). Furthermore, Rule 201(c)(2) dictates that a court "must take judicial notice if a party requests it and the court is supplied with the necessary information." *Id*. "Judicial notice is an 'evidentiary doctrine that permits the court to consider as established in a case a matter of law or fact without the necessity of formal proof of the matter by any party.'" *Adair v. Cigna Corp. Servs., LLC,* No. CV 25-2384, 2026 WL 295744, at *4 (E.D. Pa. Feb. 4, 2026) (citing 21B *Wright & Miller's Federal Practice & Procedure Evidence* § 5102 (2d ed. 2025)). While a court generally does not consider matters outside of the pleadings in ruling on a standard motion to dismiss, a court may consider documents that are "integral to or explicitly relied upon in the complaint." *Mathis v. Carney*, No. CV 21-1573, 2023 WL 2423575, at *3 n. 2 (W.D. Pa. Mar. 9, 2023) (citing *In re Asbestos Prods. Liab. Litig. (No. VI),* 822 F.3d 125, 133 n.7 (3d Cir. 2016)); *see also Goldsmith v. Weibo Corp.*, No. CV 17-4728 (SRC), 2018 WL 2733694, at *7 (D.N.J. June 7, 2018).

Here, Plaintiff explicitly relies on Twilio's telecommunications platform, its default settings, and its CNAM capabilities to form the entire basis of his Telemarketing Caller ID claim. Compl. at ¶¶ 25-27. Because Twilio's technology is undeniably integral to the claims asserted, taking judicial notice of Twilio's own public documentation regarding how that specific technology operates is necessary and appropriate to "provide context" to Plaintiff's allegations. *Inman v. Technicolor USA*, Inc., No. 11-666, 2011 WL 5829024, at *4 (W.D. Pa. Nov. 18, 2011)

10

(taking judicial notice "the User Agreement and the description of eBay's business model contained therein").

Further, the public technical documents of a major telecommunications software platform like Twilio are objective, indisputable facts from a highly reliable and mainstream source, rendering them perfectly suited for judicial notice. *See In re Kalobios Pharms., Inc. Sec. Litig.*, 258 F. Supp. 3d 999, 1004 (N.D. Cal. 2017) (granting judicial notice where there was "little dispute as to the authenticity" of the publications from "credible and mainstream sources").

The necessity of taking judicial notice here is heavily supported by the court's reasoning in *Naimi v. Starbucks Corp.*, No. LACV 17-6484-VAP (GJSx), 2018 WL 11255596 (C.D. Cal. Feb. 28, 2018). In *Naimi*, the plaintiffs alleged that Starbucks' "Doubleshot" canned beverages were deceptive because they purportedly did not contain two actual shots of espresso. *Id.* at *4. To resolve the motion to dismiss, the court took judicial notice of third-party websites to demonstrate that the term "doubleshot" does not exclusively refer to espresso, and further utilized the incorporation by reference doctrine to review the nutritional information on Starbucks' own website. *Id.* at *2-3. By looking at the technical reality of the products as established by the website documentation, the court determined that the plaintiffs' theory of liability was factually implausible and dismissed the claims. *Id.* at *5-7.

Just as the court in *Naimi* utilized website evidence to expose that a plaintiff's underlying assumptions about a product's composition were technically flawed, this Court should judicially notice Twilio's documentation to expose the fatal flaw in Plaintiff's Caller ID theory. Twilio's website unequivocally establishes the reality of its platform's limitations: mobile CNAM is an opt-in feature that simply will not display unless the recipient has affirmatively enabled it through their cellular carrier. *See* Twilio CNAM Webpage's section titled "Eligibility." Because the accuracy

11

of Twilio's own documentation regarding its platform "cannot reasonably be questioned," taking judicial notice is appropriate, and the platform's limitations permanently forecloses Plaintiff's claim that EverQuote's alleged omission caused him any harm or any harm traceable to EverQuote's actions. Fed. R. Evid. 201(b)(2).

## V.   CONCLUSION

For the foregoing reasons, EverQuote respectfully requests the Court dismiss Count II of Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

Dated: February 27, 2026

Respectfully submitted,

*/s/ V. Amanda Witts*
V. Amanda Witts, Esq. (Bar No. 308902)
MITCHELL SANDLER PLLC
2020 K Street NW, Suite 760
Washington, D.C. 20006
(202) 886-5267
v.awitts@mitchellsandler.com

AND

Eric J. Troutman (*pro hac vice* forthcoming)
California Bar No. 229263
Puja J. Amin (*pro hac vice* forthcoming)
California Bar No. 299547
Tori L. Guidry (*pro hac vice* forthcoming)
Louisiana Bar No. 37704
TROUTMAN AMIN, LP
400 Spectrum Center Drive, Suite 1550
Irvine, California 92618
Telephone: (949) 350-3663
Facsimile: (214) 758-1550
troutman@troutmanamin.com

*Attorney for Defendant EverQuote, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on February 27, 2026, a copy of the foregoing was filed electronically and served by other electronic means on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

                                                */s/ V. Amanda Witts*
                                                V. Amanda Witts