**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES E. SHELTON, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Case No. 2:26-cv-00001 |
| *v.* | HON. JOHN M. YOUNGE |
| EVERQUOTE, INC. | |
| *Defendant.* | |

**DEFENDANT EVERQUOTE, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................ 2

III.    LEGAL STANDARD ........................................................................................... 4

IV.     ARGUMENT—PLAINTIFF FAILS TO STATE A VALID CLAIM UNDER
        THE TCPA ............................................................................................................ 5

   A.   Plaintiff's Claims Must Be Dismissed Because The TCPA's DNC Provisions
        Apply Only To "Telephone Calls," Not Text Messages ....................................... 5

   B.   The Caller ID Transmission Requirements of § 64.1601(e) Do Not Legally Or
        Structurally Apply To Text Messages. ............................................................... 10

   C.   Twilio's Technical Specifications, Prove CNAM Is Not "Available" For SMS,
        Placing EverQuote in the Statutory Safe Harbor. .............................................. 14

   D.   The Court Should Take Judicial Notice of Twilio's Technical Specifications,
        Which Are Integral to Plaintiff's Complaint. .................................................... 16

V.      CONCLUSION .................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Adair v. Cigna Corp. Servs., LLC,*
  2026 WL 295744 (E.D. Pa. Feb. 4, 2026)............................................................ 23

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................... 5, 6

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................... 5, 6

*Bostock v. Clayton Cnty., Georgia,*
  590 U.S. 644 (2020) ....................................................................................... 8

*Bowen v. Georgetown Univ. Hosp.,*
  488 U.S. 204 (1988) ..................................................................................... 15

*Bradford v. Sovereign Pest Control of TX, Inc.,*
  2026 WL 520620 (5th Cir. Feb. 25, 2026)........................................................ 14

*Davis v. CVS Pharmacy, Inc.,*
  797 F.Supp.3d 1270 (N.D. Fla. 2025)................................................... 9, 10, 11

*Facebook, Inc. v. Duguid,*
  592 U.S. 395 (2021) ............................................................................... 11, 12

*Fowler v. UPMC Shadyside,*
  578 F.3d 203 (3d Cir. 2009)............................................................................. 6

*Goldsmith v. Weibo Corp.,*
  2018 WL 2733694 (D.N.J. June 7, 2018) ......................................................... 24

*Hasson v. FullStory, Inc.,*
  2023 WL 4727619 (W.D. Pa. July 25, 2023)..................................................... 23

*In re Asbestos Prods. Liab. Litig. (No. VI),*
  822 F.3d 125 (3d Cir. 2016)........................................................................... 23

*In re Kalobios Pharms., Inc. Sec. Litig.,*
  258 F. Supp. 3d 999 (N.D. Cal. 2017) ............................................................. 24

*Inman v. Technicolor USA,* Inc.,
  2011 WL 5829024 (W.D. Pa. Nov. 18, 2011) ................................................... 24

*Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n,*
    127 F.4th 303 (11th Cir. 2025) ............................................................... 14

*Iraola & CIA, S.A. v. Kimberly-Clark Corp.,*
    232 F.3d 854 (11th Cir. 2000) ................................................................. 10

*Jones v. Blackstone Med. Servs., LLC,*
    792 F.Supp.3d 894 (C.D. Ill. 2025) .............................................. 11, 13, 14

*Loper Bright Enters. v. Raimondo,*
    603 U.S. 369 (2024) ................................................................... 1, 7, 19

*Mathis v. Carney,*
    2023 WL 2423575 (W.D. Pa. Mar. 9, 2023) ............................................. 23

*McGonigle v. Pure Green Franchise Corp.,*
    2026 WL 111338 (S.D. Fla. Jan. 15, 2026) ............................................. 13

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,*
    606 U.S. 146 (2025) ........................................................... 1, 7, 15, 19

*Naimi v. Starbucks Corp.,*
    2018 WL 11255596 (C.D. Cal. Feb. 28, 2018) ......................................... 25

*Newell v. JR Capital, LLC,*
    791 F. Supp. 3d 571 (E.D. Pa. 2025) ...................................................... 18

*Pulsifer v. United States,*
    601 U.S. 124 (2024) .............................................................................. 10

*Radvansky, v. 1-800-FLOWERS.COM, INC,*
    2026 WL 456919 (N.D. Ga. Feb. 17, 2026) ...................................... 11, 13

*Ryan, LLC v. Fed. Trade Comm'n,*
    746 F. Supp. 3d 369 (N.D. Tex. 2024) .................................................... 16

*Sayed v. Naturopathica Holistic Health, Inc.,*
    2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) .................................... 11, 12

*Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs.,*
    143 F.4th 1331 (11th Cir. 2025) ........................................................ 10, 13

*U.S. Express Lines Ltd. v. Higgins,*
    281 F.3d 383 (3d Cir. 2002) .................................................................. 5, 7

*Worsham v. Travel Options, Inc.*,

    2016 WL 4592373 (D. Md. Sept. 2, 2016) ............................................................................ 16

**Statutes and Rules**

47 C.F.R. § 64.1601 .......................................................................................................... 2, 14, 16

47 C.F.R. pt. 64 ........................................................................................................................... 11

47 U.S.C. § 227 ..................................................................................................................... passim

Consolidated Appropriations Act, 2018,

    PL 115-141, March 23, 2018, 132 Stat 348, § 503 ............................................................ 12, 13

Consolidated Appropriations Act,

    2018, Pub. L. No. 115-141, § 503 ............................................................................................ 8

Fed. R. Evid. 201 ......................................................................................................................... 18

*Truth in Caller ID Rules*,

    84 Fed. Reg. 45,669 (Aug. 30, 2019) ........................................................................... 11, 12, 13

**Other Authorities**

*First SMS Text Message Is Sent, History* (Oct. 4, 2022),

    https://www.history.com/this-day-in-history/December-3/first-sms-text-message-sent ........... 6

Rosie Dobson et. al., *Don't Forget the Humble Text Message: 25 Years of Text*

    *Messaging in Health* (2024), https://pmc.ncbi.nlm.nih.gov/articles/PMC11688580/ ............... 6

Twilio Inc., *What to know before sending international SMS message,*

    https://www.twilio.com/docs/messaging/guides/sending-international-sms-guide?

    utm_source) (last visited Feb. 25, 2026) ....................................................................... 3, 15, 18

Twilio, Inc., *Guidelines United States (US)*, https://www.twilio.com/en-

    us/guidelines/us/sms?_gl=1%2A1psse56%2A_gcl_au%2AMTQ4ODY4MTQ0MC

    4xNzcyMDgyNzkw%2A_ga%2AMTQwNDI2MjQ3NC4xNzcxMDI4OTg3%2A_ga_

    RRP8K4M4F3%2AczE3NzIwODI3ODkkbzUkZzAkdDE3NzIwODI3ODkkajYwJGww

    JGgw (last visited Feb. 25, 2026) .................................................................................. 4, 15, 18

Twilio, Inc., *International support for Alphanumeric Sender ID*,

    https://help.twilio.com/articles/223133767-International-support-for-Alphanumeric-

    Sender-ID (last visited Feb. 25, 2026) .......................................................................... 3, 15, 18

*Wright & Miller's Federal Practice & Procedure Evidence* § 5102 (2d ed. 2025) ..................... 16

Defendant EverQuote, Inc. ("EverQuote"), by and through its undersigned counsel, hereby moves this Honorable Court to dismiss Plaintiff James E Shelton's ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. <u>INTRODUCTION</u>

Plaintiff's Complaint asks this Court to rewrite the plain text of the Telephone Consumer Protection Act ("TCPA") to equate "text messages" to "telephone calls." Following the Supreme Court's recent decisions in *Loper Bright* and *McLaughlin*, this Court is no longer bound by past Federal Communications Commission ("FCC") interpretations and must interpret the TCPA "under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,* 606 U.S. 146, 168 (2025); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024). Under the plain text of the TCPA and its implementing regulations, the Complaint must be dismissed as it fails to state a valid claim for three reasons.

First, Count I must be dismissed because "text messages" are not "telephone calls." "The TCPA's Do Not Call ("DNC") private right of action, 47 U.S.C. § 227(c)(5), expressly provides a remedy only to a person who receives a "telephone call." The statute does not mention text messages, and Plaintiff does not mention telephone calls. Text messages and telephone calls are distinct forms of communication, and text messages are purposefully excluded from the DNC provisions.

Second, Count II must be dismissed because the Caller ID transmission requirements of 47 C.F.R. § 64.1601(e) are legally invalid and structurally inapplicable to text messages. As a threshold matter, the FCC lacked the statutory authority to promulgate this rule in the first place, because Congress never delegated the power to impose a Caller ID mandate under the TCPA. Even

assuming the rule is valid for "telephone calls," the agency lacked the authority to extend it to "text messages." When Congress amended telecommunications laws in 2018, it expanded separate anti-spoofing laws to cover texts but deliberately left the TCPA's privacy provisions untouched. Finally, applying the regulation's "regular business hours" DNC mandate to technology such as text messages—which can receive DNC requests 24/7— makes no logical sense and confirms the rule was not designed for text messages.

Third, even if this Court finds that 47 C.F.R. § 64.1601(e) applies to text messages, EverQuote falls squarely within the regulation's statutory safe harbor. The rule only requires Caller ID Name ("CNAM") transmission "when available by the telemarketer's carrier." 47 C.F.R. § 64.1601(e)(1). The Complaint explicitly alleges that EverQuote used Twilio as its carrier. Complaint ("Compl.") at ¶¶ 25-27. As Twilio's publicly available technical documentation confirm—facts this Court may judicially notice—neither CNAM technology nor alternative caller ID methods are available for SMS text messages in the United States. The law does not require EverQuote to perform a technological impossibility.

Ultimately, because the plain text of the TCPA, established canons of statutory construction, and the technological limitations of the carrier Plaintiff himself identifies preclude any valid claim under the TCPA, the Complaint does not state a plausible claim for relief and must be dismissed under Rule 12(b)(6).

## II. **FACTUAL BACKGROUND**

Plaintiff brings this putative class action alleging that EverQuote sent fourteen telemarketing text messages to his cellular telephone number between October 2025 and November 2025. Compl. at ¶¶ 22-23. Based entirely on his receipt of these text messages, Plaintiff alleges that EverQuote: 1) violated the TCPA's National DNC Registry provisions ("Count I") by

calling his cellular telephone number that he listed on the National DNC Registry without his consent and 2) violated 47 C.F.R. § 64.1601(e) by failing to transmit an accurate Caller ID Name ("CNAM") reflecting EverQuote's name ("Count II") on the at-issue text messages. *Id*. at ¶¶ 20-21, 33, 46-54.

Plaintiff alleges Twilio "provides its customers the ability to set the CNAM result accurately to reflect their own name as desired." *Id*. at ¶ 27. Additionally, Plaintiff alleges that EverQuote did not elect a CNAM to accurately reflect its own name, resulting in the default transmission of the "geographic location of the telephone exchange for the calling telephone number" rather than EverQuote's name. *Id*. at ¶¶ 26-27. However, Plaintiff only alleges that he received text messages, not telephone calls. *See generally id*.

Twilio's own public online technical documentation explicitly states that CNAM is a voice-only feature: "A CNAM determines what a voice call recipient sees on their device... The CNAM doesn't display for SMS messages." *See* Twilio Inc., *What to know before sending international SMS message,* https://www.twilio.com/docs/messaging/guides/sending-international-sms-guide?_utm_source) (last visited Feb. 25, 2026) (under the header titled "Alphanumeric sender IDs" the document explains that Alphanumeric sender IDs differ from CNAM because CNAM does not display for SMS messages). Twilio public technical documentation also clarifies that Alphanumeric Sender IDs are not available in the United States either. *See* Twilio, Inc., *International support for Alphanumeric Sender ID*, https://help.twilio.com/articles/223133767-International-support-for-Alphanumeric-Sender-ID (last visited Feb. 25, 2026); *see also* Twilio, Inc., *Guidelines United States (US)*, https://www.twilio.com/en-us/guidelines/us/sms?_gl=1%2A1psse56%2A_gcl_au%2AMTQ4ODY4MTQ0MC4xNzcyMDg

3

yNzkw%2A_ga%2AMTQwNDI2MjQ3NC4xNzcxMDI4OTg3%2A_ga_RRP8K4M4F3%2AczE

3NzIwODI3ODkkbzUkZzAkdDE3NzIwODI3ODkkajYwJGwwJGgw (last visited Feb. 25,

2026).

### III. <u>LEGAL STANDARD</u>

A complaint that "fail[s] to state a claim upon which relief can be granted" is subject to

dismissal under Rule 12(b)(6). Under this rule, a complaint should be dismissed unless it

"contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.*

"When considering a Rule 12(b)(6) motion, courts accept as true the allegations in the

complaint and its attachments, as well as reasonable inferences construed in the light most

favorable to the plaintiffs." *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002)

(citation omitted). The Third Circuit has made it clear that "[a]fter *Iqbal,* it is clear that conclusory

or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Fowler*

*v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678); *see also*

*Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

not need detailed factual allegations…a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do…" (internal citations omitted)). To survive a motion

to dismiss, a civil complaint must contain "sufficient factual matter" to state a claim that is facially

4

plausible. *Fowler*, 578 F.3d at 210. Facial plausibility exists when the pleaded facts allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Together, *Iqbal* and *Twombly* establish that a plaintiff's allegations must cross the line from merely possible to plausible. *Fowler*, 578 F.3d at 210 (citations omitted); *see also Iqbal*, 556 U.S. at 678–80; *Twombly*, 550 U.S. at 555.

Additionally, although a district court may not consider matters extraneous to the pleadings when ruling on a motion to dismiss pursuant to Rule 12(b)(6), "a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *U.S. Express Lines Ltd.*, 281 F.3d at 388 (citation omitted) (emphasis added in original).

## IV. ARGUMENT—PLAINTIFF FAILS TO STATE A VALID CLAIM UNDER THE TCPA.

### A. Plaintiff's Claims Must Be Dismissed Because The TCPA's DNC Provisions Apply Only To "Telephone Calls," Not Text Messages.

Plaintiff's claims must be dismissed because they are based on a legal theory that is foreclosed by the plain text of the TCPA. The private right of action Plaintiff sues under, 47 U.S.C. § 227(c)(5), provides a remedy only for "[a] person who has received more than one telephone *call*." 47 U.S.C. § 227(c)(5) (emphasis added). Section 47 U.S.C. § 227(c)(5) does not mention text messages. *Id*. While courts have historically been required to rely on the FCC interpretations that expanded the meaning of "call," the Supreme Court's recent decision in *McLaughlin* freed the courts to interpret the TCPA as Congress intended. *McLaughlin,* 606 U.S. at 168 ("The District Court is not bound by the FCC's interpretation of the TCPA."). Thus, this Court is no longer bound by agency deference and must "independently determine for itself whether the agency's interpretation of a statute is correct" using "ordinary principles of statutory interpretation." *Id*. at

155 (citing *Loper Bright*, 603 U.S. at 402). Thus, it is the court's obligation to interpret statutes "in accord with the ordinary public meaning of its terms at the time of its enactment" because "only the words on the page constitute the law adopted by Congress and approved by the President." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 654–55 (2020) (explaining "i[f] judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's representatives[, a]nd we would deny the people the right to continue relying on the original meaning of the law they have counted on to settle their rights and obligations") (citation omitted).

The ordinary meaning of "telephone call" in 1991, when the TCPA was enacted, unambiguously referred to a voice-to-voice communication. This is a matter of historical fact, as text messaging technology did not yet exist. The TCPA was enacted on December 20, 1991, while the first SMS text message was not sent until nearly a year later. *Compare* 47 U.S.C. § 227 (originally enacted on December 20, 1991), *with First SMS Text Message Is Sent, History* (Oct. 4, 2022), https://www.history.com/this-day-in-history/December-3/first-sms-text-message-sent ("On December 3, 1992, the first SMS text message in history is sent[.]"); *see also* Rosie Dobson et. al., *Don't Forget the Humble Text Message: 25 Years of Text Messaging in Health* (2024), https://pmc.ncbi.nlm.nih.gov/articles/PMC11688580/ ("In December 1992, the first SMS text message was sent. It contained the words 'Merry Christmas' and was sent by a 22-year-old software programmer from the United Kingdom. It took several more years for text messaging to become a standard means of communication from mobile phone to mobile phone.") (citation omitted). Congress, therefore, could not possibly have intended the term "telephone call" to encompass a technology that was not yet in use.

6

Even putting historical usage aside, as the *Davis* court in the Northern District of Florida explained, the ordinary meaning and usage of the term "telephone call" simply does not encompass text messages:

> No normal person refers to a text message, or thinks of a text message, as a "call." No ordinary user of the English language would write the sentence "John called Sue" intending to mean "John sent a text message to Sue," nor would any ordinary reader interpret the sentence in that manner. Certainly, no ordinary person would think of a text message as a "telephone call." This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case."

*Davis v. CVS Pharmacy, Inc.*, 797 F.Supp.3d 1270, 1273 (N.D. Fla. 2025).

Both the historical and ordinary meaning interpretations of 47 U.S.C. § 227(c)(5) are reinforced by the canons of statutory construction. The TCPA's definition of "telephone solicitation" in § 227(a)(4) refers to the initiation of a "telephone call *or message*." 47 U.S.C. § 227(a)(4) (emphasis added). Yet, in the private right of action provision at issue here, 47 U.S.C. § 227(c)(5), Congress deliberately chose to provide a remedy only for the receipt of more than one "telephone ***call***." *Id*. (emphasis added). As the *Davis* court explained, courts must "presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings." *Davis*, 797 F.Supp.3d at 1274 (quoting and citing *Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs.*, 143 F.4th 1331, 1344 (11th Cir. 2025); *accord Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 859 (11th Cir. 2000) ("[W]hen Congress uses different language in similar sections, it intends different meanings.")); see also *Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute, the same term usually has the same meaning and different terms usually have different meanings.") (citation omitted). Thus, Congress's choice to omit the words "or message" from the private right of action was a deliberate one that forecloses Plaintiff's claim.

Indeed, in the wake of *McLaughlin*, at least courts have applied the statute's plain text

and structure to dismiss DNC claims based on texts. *See Davis*, 797 F.Supp.3d at 1270-76 (holding that "telephone call" cannot include texts); *see also Jones v. Blackstone Med. Servs., LLC*, 792 F.Supp.3d 894, 900–01(C.D. Ill. 2025) (rejecting reliance on FCC's § 227(b) rulemaking in the § 227(c) context); *Radvansky, v. 1-800-FLOWERS.COM, INC*, No. 1:25-CV-2811-TWT, 2026 WL 456919, at*3–4 (N.D. Ga. Feb. 17, 2026) (same); *Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-CV-00847-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (same).

In *Davis v. CVS Pharmacy, Inc.*, the Northern District of Florida squarely rejected a DNC claim based on text messages. *Davis*, 797 F.Supp.3d at 1270-76. The court explained that cases treating texts as "calls" arose under § 227(b), which broadly prohibits "any call," not the narrower "telephone call" in § 227(c)(5). *Id.* at 1273. It also explained that Supreme Court has never decided the issue; in *Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 n.2 (2021), the Court merely assumed for purposes of § 227(b) that texts could qualify as calls, an assumption with no binding force in the DNC context. *Id*. Accordingly, the court found that no precedent supports treating a text as a "telephone call" under § 227(c)(5). *Id*.

The court in *Sayed* agreed with this interpretation reasoning "that in common American Eng-lish usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication." Additionally, the court explained this was also the correct interpretation because "the term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent dis-tinction and legislated mindful of the distinction." *Sayed*, 2025 WL 2997759, at *2 (citing Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, § 503(a) (codified at 47 U.S.C. §§ 227(e)(8)(A)–(B)). Like *Davis*, the court held that the deliberate omission of "'text message' paragraph 227(c)(5) confirms that

8

the provision applies only to a 'telephone call.'" *Id*.

Likewise, the Northern District of Georgia in *Radvansky v. 1-800-FLOWERS.COM, Inc.*, explicitly rejected the plaintiff's attempt to use the FCC's 2003 Order to redefine "telephone call." *Radvansky,* 2026 WL 456919, at \*4. It reasoned that Congress' delegation under the TCPA "did not authorize the FCC to determine that "telephone call" includes text messages." *Id*. (quoting *McGonigle v. Pure Green Franchise Corp*., No. 25-61164-CIV-SINGHAL, 2026 WL 111338, at \*2 (S.D. Fla. Jan. 15, 2026)). Because Congress recently added "text message" to § 227(e) while deliberately leaving § 227(c)(5) untouched, the court concluded that text messages are unequivocally excluded from § 227(c)(5). *Id*. at \*3–4 (quoting *Sunshine State Reg'l Ctr., Inc.*, 143 F.4th at 1344 ("[W]hen a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings.")).

Additionally, in *Jones*, the court dismissed a DNC claim based on text messages after performing an analysis of the FCC's rulemaking history. *Jones*, 792 F.Supp.3d at 900–01. The *Jones* court found that the FCC's 2003 Order, which interpreted "calls" to include "texts," did so by explicitly referencing its authority under § 227(b) of the TCPA. *Id*. The court correctly reasoned that the FCC's interpretation under the automatic telephone dialing system provision does not apply to the separate DNC provisions in § 227(c). *Id*. Thus, even the FCC's own reasoning does not support Plaintiff's claim here.

Here, Plaintiff's entire Complaint is predicated on his receipt of text messages. Compl. at ¶ 22. He does not allege he received a single voice call. Thus, based on the statute's plain text, established canons of construction, and the persuasive authority from the post-*McLaughlin* rulings in *Davis*, *Sayed*, *Radvansky*, and *Jones*, both of Plaintiff's causes of action fail to state claims and must be dismissed.

Additionally, the plain text conclusion of these post-*McLaughlin* rulings is bolstered by a growing appellate consensus that the FCC cannot rewrite the TCPA under the guise of implementing it. Recently, the Eleventh Circuit vacated an FCC rule because it "impermissibly conflict[ed] with the ordinary statutory meaning" of the TCPA. The court explained that the FCC cannot "alter the specific choices Congress made." *Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n*, 127 F.4th 303, 311-12 (11th Cir. 2025). Additionally, just days ago, the Fifth Circuit similarly found that the FCC wrongly interpreted the TCPA's "express consent" requirement by adding in a "written" requirement into the regulations. *See Bradford v. Sovereign Pest Control of TX, Inc.,* No. 24-20379, 2026 WL 520620, at *2-3 (5th Cir. Feb. 25, 2026). Similarly, this Court should reject any purported FCC's overreach and evaluate Plaintiff's claims based solely on the TCPA's enacted text.

### B. The Caller ID Transmission Requirements of § 64.1601(e) Do Not Legally Or Structurally Apply To Text Messages.

Even if this Court were to look past the threshold issue that texts are not "calls" under the TCPA's Do-Not-Call provisions, Count II must be dismissed because the FCC lacked the statutory authority to promulgate 47 C.F.R. § 64.1601(e) in the first place. "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). In the wake of the Supreme Court's ruling in *Loper Bright*, courts no longer blindly defer to an agency's attempt to fill perceived statutory gaps. *Loper Bright,* 603 U.S. at 412-13. As the Supreme Court confirmed in *McLaughlin*, district courts are "not bound by the FCC's interpretation of the TCPA" and must independently determine the statute's meaning. *McLaughlin*, 606 U.S. at 155.

When Congress enacted the TCPA in 1991, it granted the FCC specific, limited regulatory powers. Congress authorized the FCC to prescribe regulations protecting consumer privacy via

the DNC registry under 47 U.S.C. § 227(c), and authorized technical standards for automatic telephone dialing systems and prerecorded voice messages under 47 U.S.C. § 227(d). Nowhere in the TCPA did Congress grant the FCC the authority to impose a blanket, affirmative Caller ID transmission mandate on all telemarketing calls. As the District of Maryland correctly observed in *Worsham*, "[c]aller ID technology does not fit neatly into the focus of either subsection [b or c], neither of which requires the use of such technology to accomplish their respective purposes." *Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373, *4 (D. Md. Sept. 2, 2016), *aff'd,* 678 F. App'x 165 (4th Cir. 2017). Thus, because Congress never delegated the authority to mandate affirmative Caller ID transmission, § 64.1601(e) was created without authority, and a claim based upon it must be dismissed. *Ryan, LLC v. Fed. Trade Comm'n*, 746 F. Supp. 3d 369, 389 (N.D. Tex. 2024) (granting summary judgement in favor of the plaintiffs, partly because the FTC lacked "statutory authority to promulgate the Non-Compete Rule," and [t]hus, the FTC's promulgation of the Rule is an unlawful agency action.").

Even assuming *arguendo* that § 64.1601(e) is a valid exercise of authority over traditional voice calls, the FCC still lacked the statutory authority to impose these technical transmission standards on SMS text messaging. To fully understand why the regulation cannot be stretched to cover texts, the Court must examine the distinct statutory history of two separate telecommunications laws: the TCPA and the Truth in Caller ID Act ("TCIA").

The TCIA, 47 U.S.C. § 227(e), is strictly an anti-fraud statute that prohibits malicious spoofing. *See* 47 U.S.C. § 227(e). In 2018, Congress passed the RAY BAUM'S Act, which explicitly expanded the FCC's anti-spoofing authority under the TCIA to cover "a voice service or a text message sent using a text messaging service." *See Truth in Caller ID Rules*, 84 Fed. Reg. 45,669, 45,670 (Aug. 30, 2019) (to be codified at 47 C.F.R. pt. 64); *see also* Consolidated

11

Appropriations Act, 2018, PL 115-141, March 23, 2018, 132 Stat 348, § 503(a)(1) ("SPOOFING PREVENTION. (a) EXPANDING AND CLARIFYING PROHIBITION ON MISLEADING OR INACCURATE CALLER IDENTIFICATION INFORMATION…(1)…Section 227(e)(1) of the Communications Act of 1934 (47 U.S.C. 227(e)(1)) is amended by striking "in connection with any telecommunications service or IP-enabled voice service" and inserting "or any person outside the United States if the recipient is within the United States, in connection with any voice service or text messaging service."). To implement this specific statutory update, the FCC released its *Truth in Caller ID Rules* in 2019, explicitly stating it was amending its rules solely "to implement the amendments to section 227(e) of the Communications Act adopted by Congress last year as part of the RAY BAUM'S Act." *Truth in Caller ID Rules*, 84 Fed. Reg. at 45,669.

To execute this anti-fraud mandate, the FCC amended the definitions in 47 C.F.R. § 64.1600—specifically updating the definition of "caller identification information" to include information regarding "a text message sent using a text messaging service"—and updated the anti-spoofing prohibition in 47 C.F.R. § 64.1604. *Id.* at 45,670, 45,678. Notably absent from these 2019 Final Rules is any amendment to 47 C.F.R. § 64.1601, the delivery requirements and privacy restrictions rule.

While EverQuote acknowledges the recent, adverse decision from this District in *Newell v. JR Capital*, which held that the telemarketing transmission rules apply to text messages, that decision is fundamentally flawed and should not be followed. *Newell v. JR Capital, LLC*, 791 F. Supp. 3d 571, 582-84 (E.D. Pa. 2025). The *Newell* court reached its conclusion by relying on the "consistent-usage canon" to copy-paste the updated 2019 definition of "caller identification information" from 47 C.F.R. § 64.1600(c) directly into the telemarketing rule at § 64.1601(e). *Id.*

at 584 n. 17. This is where the *Newell* court erred by ignoring the administrative record and the FCC's own explicit limiting language.

The 2019 Federal Register proves that the FCC updated the § 64.1600(c) definition solely to implement the TCIA's anti-spoofing mandates. *Truth in Caller ID Rules*, 84 Fed. Reg. at 45,669, 45,670, 45,673, 45,678. In doing so, the FCC expressly recognized that Congress intentionally segregated this text messaging authority away from the rest of the TCPA, observing: "Congress placed the new definition of 'text message' in section 227(e) rather than in section 227(a), which contains definitions generally applicable throughout section 227". *Id.* at 45,672.

Plaintiff may attempt to save his claim by pointing to the very next sentence in the Order: "Consequently, we conclude that there is nothing in section 227(e) as amended to suggest that Congress intended to disturb the Commission's long-standing treatment of text messages under section 227(b), which has been in place since 2003." *Id.* This sentence does not help Plaintiff. The FCC explicitly limited its cross-reference to § 227(b)—the provision governing automatic telephone dialing systems. It noticeably omitted any claim that its new text messaging definitions applied to § 227(c), the privacy provision under which § 64.1601(e) purportedly operates.

Moreover, the FCC's reliance on its own "long-standing treatment" to justify regulatory reach is exactly the type of agency overreach that *Loper Bright* and *McLaughlin* extinguished. *Loper Bright,* 603 U.S. at 412–13; *McLaughlin*, 606 U.S. at 155. The FCC cannot manufacture authority by pointing to an outdated 2003 interpretation of § 227(b) to magically expand the scope of § 227(c). Congress explicitly expanded the statute to cover SMS for malicious spoofing under § 227(e), but deliberately left the telemarketing privacy provisions untouched. *See* Consolidated Appropriations Act, 2018, PL 115-141, March 23, 2018, 132 Stat 348, § 503(a)(1). By grafting a

definition created specifically for an anti-fraud statute into an entirely separate privacy rule, the *Newell* court committed a clear error of statutory interpretation that this Court should reject.

This underlying lack of statutory authority is further corroborated by the plain text of the regulation itself, which demonstrates that applying § 64.1601(e) to text messages creates a glaring inconsistency. Section 64.1601(e)(1) explicitly requires that the provided telephone number must permit an individual to make a do-not-call request "during regular business hours." 47 C.F.R. § 64.1601(e). This limitation is undeniably made for traditional voice telephone calls. It makes no logical or operational sense when applied to text messaging. SMS relies on servers that can receive consumer "STOP" replies 24 hours a day, 7 days a week. A text server or platform does not clock out at 5:00 p.m. Imposing a "business hours" mandate onto a 24/7 text messaging system is forcing a square peg into a round hole. The FCC's deliberate inclusion of a "business hours" restriction confirms the regulation was designed exclusively for voice calls, not SMS. Accordingly, § 64.1601(e) cannot legally or structurally apply to the text messages alleged here.

Ultimately, because the FCC lacked the delegated statutory authority to extend § 64.1601(e) to SMS, and because the rule cannot structurally apply to text messaging regardless, the Caller ID transmission requirements do not apply to the communications alleged here. Consequently, Count II fails as a matter of law and must be dismissed.

### C. Twilio's Technical Specifications, Prove CNAM Is Not "Available" For SMS, Placing EverQuote in the Statutory Safe Harbor.

Even if this Court finds that 47 C.F.R. § 64.1601(e) applies to text messages, Count II must still be dismissed because EverQuote's alleged conduct falls squarely within the regulation's express statutory safe harbor. The plain text of 47 C.F.R. § 64.1601(e)(1) requires the transmission of a telemarketer's name only "when available by the telemarketer's carrier." 47 C.F.R. § 64.1601(e)(1). By including this limiting language, the FCC explicitly shielded telemarketers from

14

liability when their telecommunications carrier does not technologically support or provide CNAM transmission for the specific type of communication being sent.

Here, Plaintiff has pled himself out of court by explicitly identifying Twilio as EverQuote's carrier. Compl. at ¶¶ 25-27. Plaintiff bases his entire Caller ID claim on a "dip" of Twilio's database, alleging that Twilio "provides its customers the ability to set the CNAM result accurately to reflect their own name as desired," and that EverQuote simply failed to utilize this feature. *Id*. at ¶¶ 26-27.

However, Plaintiff's allegation is technologically impossible and directly contradicted by the carrier itself. As detailed in Section D below, the Court may take judicial notice of Twilio's own public technical documentation, which explicitly states that CNAM is only a voice call feature. *See* Twilio Inc., *What to know before sending international SMS messages*, https://www.twilio.com/docs/messaging/guides/sending-international-sms-guide (last visited Feb. 25, 2026). Twilio warns its users: "A CNAM determines what a voice call recipient sees on their device in place of a long code. The CNAM doesn't display for SMS messages." *Id.* (language located in "Alphanumeric sender IDs" section). Furthermore, Twilio's public documentation clarifies that alternative text-naming workarounds, such as Alphanumeric Sender IDs, are not available for use in the United States either. *See* Twilio, Inc., *International support for Alphanumeric Sender ID*, https://help.twilio.com/articles/223133767-International-support-for-Alphanumeric -Sender-ID (last visited Feb. 25, 2026); *see also* Twilio, Inc., *Guidelines United States (US)*, https://www.twilio.com/en-us/guidelines/us/sms?_gl=1%2A1psse56%2A_gcl_au%2AMTQ4ODY4MTQ0MC4xNzcyMDgyNzkw%2A_ga%2AMTQwNDI2MjQ3NC4xNzcxMDI4OTg3%2A_ga_RRP8K4M4F3%2AczE3NzIwODI3ODkkbzUkZzAkdDE3NzIwODI3ODkkajYwJGwwJGgw (last visited Feb. 25, 2026).

Because Plaintiff explicitly pleads that Twilio is the carrier, and Twilio's own documentation establishes that CNAM is physically and technologically unavailable for SMS text messages, the requested transmission is inherently not "available by the telemarketer's carrier." 47 C.F.R. § 64.1601(e)(1). The law does not require EverQuote to perform a technological impossibility. Because EverQuote is fully protected by the safe harbor provision of 47 C.F.R. § 64.1601(e)(1), Count II is facially implausible and must be dismissed.

### D.   The Court Should Take Judicial Notice of Twilio's Technical Specifications, Which Are Integral to Plaintiff's Complaint.

Federal Rule of Evidence 201(b) establishes that a court may judicially notice a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Hasson v. FullStory, Inc*., No. 2:22-CV-1246, 2023 WL 4727619, at \*1 (W.D. Pa. July 25, 2023). Furthermore, Rule 201(c)(2) dictates that a court "must take judicial notice if a party requests it and the court is supplied with the necessary information." *Id*. "Judicial notice is an 'evidentiary doctrine that permits the court to consider as established in a case a matter of law or fact without the necessity of formal proof of the matter by any party.'" *Adair v. Cigna Corp. Servs., LLC,* No. CV 25-2384, 2026 WL 295744, at \*4 (E.D. Pa. Feb. 4, 2026) (citing 21B *Wright & Miller's Federal Practice & Procedure Evidence* § 5102 (2d ed. 2025)). While a court generally does not consider matters outside of the pleadings in ruling on a standard motion to dismiss, a court may consider documents that are "integral to or explicitly relied upon in the complaint." *Mathis v. Carney*, No. CV 21-1573, 2023 WL 2423575, at \*3 n. 2 (W.D. Pa. Mar. 9, 2023) (*citing In re Asbestos Prods. Liab. Litig. (No. VI),* 822 F.3d 125, 133 n.7 (3d Cir. 2016)); *see also Goldsmith v. Weibo Corp.*, No. CV 17-4728 (SRC), 2018 WL 2733694, at \*7 (D.N.J. June 7, 2018).

Here, Plaintiff explicitly relies on Twilio's telecommunications platform, its default

settings, and its CNAM capabilities to form the entire basis of his Telemarketing Caller ID claim. Compl. at ¶¶ 25-27. Because Twilio's technology is undeniably integral to the claims asserted, taking judicial notice of Twilio's own public documentation regarding how that specific technology operates is necessary and appropriate to "provide context" to Plaintiff's allegations. *Inman v. Technicolor USA*, Inc., No. CIV.A. 11-666, 2011 WL 5829024, at *4 (W.D. Pa. Nov. 18, 2011) (taking judicial notice "the User Agreement and the description of eBay's business model contained therein").

Further, the public technical documents of a major telecommunications software platform like Twilio are objective, indisputable facts from a highly reliable and mainstream source, rendering them perfectly suited for judicial notice. *See In re Kalobios Pharms., Inc. Sec. Litig.*, 258 F. Supp. 3d 999, 1004 (N.D. Cal. 2017) (granting judicial notice where there was "little dispute as to the authenticity" of the publications from "credible and mainstream sources").

The necessity of taking judicial notice here is heavily supported by the court's reasoning in *Naimi v. Starbucks Corp*., No. LACV 17-6484-VAP (GJSx), 2018 WL 11255596 (C.D. Cal. Feb. 28, 2018). In *Naimi*, the plaintiffs alleged that Starbucks' "Doubleshot" canned beverages were deceptive because they purportedly did not contain two actual shots of espresso. *Id*. at *4. To resolve the motion to dismiss, the court took judicial notice of third-party websites to demonstrate that the term "doubleshot" does not exclusively refer to espresso, and further utilized the incorporation by reference doctrine to review the nutritional information on Starbucks' own website. *Id*. at *2-3. By looking at the technical reality of the products as established by the website documentation, the court determined that the plaintiffs' theory of liability was factually implausible and dismissed the claims. *Id*. at *5-7.

17

Just as the court in *Naimi* utilized website evidence to expose that a plaintiff's underlying assumptions about a product's composition were technically flawed, this Court should judicially notice Twilio's documentation to expose the fatal flaw in Plaintiff's Caller ID theory. Here, Twilio's own technical documentation explicitly states that CNAM is a voice-only feature: "A CNAM determines what a voice call recipient sees on their device... The CNAM doesn't display for SMS messages," *see* Twilio Inc., *What to know before sending international SMS messages*, https://www.twilio.com/docs/messaging/guides/sending-international-sms-guide?utm_source (last visited on Feb. 25, 2026), and that Alphanumeric Sender IDs are not available in the United States either, Twilio, Inc., *International support for Alphanumeric Sender ID*, https://help.twilio.com/articles/223133767-International-support-for-Alphanumeric-Sender-ID (last visited Feb. 25, 2026). *See also*, Twilio, Inc., *Guidelines United States (US)*, https://www.twilio.com/en-us/guidelines/us/sms?_gl=1%2A1psse56%2A_gcl_au%2AMTQ4ODY4MTQ0MC4xNzcyMDg yNzkw%2A_ga%2AMTQwNDI2MjQ3NC4xNzcxMDI4OTg3%2A_ga_RRP8K4M4F3%2AczE 3NzIwODI3ODNkkbzUkZzAkdDE3NzIwODI3ODkkajYwJGwwJGgw (last visited Feb. 25, 2026). Thus, there was no possible route for EverQuote to display its caller identification information on the text messages received by Plaintiff. As such, by pleading that Twilio is the carrier, Plaintiff has pled himself out of court because EverQuote falls squarely within the regulation's statutory safe harbor.

Therefore, because the accuracy of Twilio's own documentation regarding its platform "cannot reasonably be questioned" and it integral to Plaintiff's Complaint, taking judicial notice is appropriate. Fed. R. Evid. 201(b)(2).

18

## V. <u>CONCLUSION</u>

For the foregoing reasons, EverQuote respectfully requests the Court grant its Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: February 27, 2026

<div style="margin-left: 40%;">

Respectfully submitted,

*/s/ V. Amanda Witts*
V. Amanda Witts, Esq. (Bar No. 308902)
MITCHELL SANDLER PLLC
2020 K Street NW, Suite 760
Washington, D.C. 20006
(202) 886-5267
v.awitts@mitchellsandler.com

AND

Eric J. Troutman (*pro hac vice* forthcoming)
California Bar No. 229263
Puja J. Amin (*pro hac vice* forthcoming)
California Bar No. 299547
Tori L. Guidry (*pro hac vice* forthcoming)
Louisiana Bar No. 37704
TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550
Irvine, California 92618
Telephone: (949) 350-3663
Facsimile: (214) 758-1550
troutman@troutmanamin.com

*Attorney for Defendant EverQuote, Inc.*

</div>

19

## CERTIFICATION OF SERVICE

I hereby certify that on February 27, 2026, a copy of the foregoing was filed electronically and served by other electronic means on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

<div align="right">

*/s/ V. Amanda Witts*
V. Amanda Witts

</div>

20