**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES E. SHELTON, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Case No. 2:26-cv-00001 |
| *v.* | HON. JOHN M. YOUNGE |
| EVERQUOTE, INC. | |
| *Defendant.* | |

**DEFENDANT EVERQUOTE, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO STRIKE CLASS ALLEGATIONS**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL ALLEGATIONS ................................................................................. 2

III.  LEGAL STANDARD ........................................................................................... 3

IV.  ARGUMENT—PLAINTIFF'S PROPOSED CLASS DEFINITIONS MUST BE STRICKEN BECAUSE THEY ARE FACIALLY UNCERTIFIABLE AS A MATTER OF LAW. ................................................................................................ 4

   A.   The Proposed Classes Are Overly Broad As Defined. ................................... 4

     1.   The National DNC Class Is Overly Broad Because It Includes Individuals Who Consented To Receive Calls Or Had An Established Business Relationship With EverQuote. ..................................................................... 6

     2.   The National DNC Class Is Overly Broad Because It Improperly Includes Individuals Who Have Not Personally Registered Their Telephone Numbers On The National DNC Registry ................................................. 9

     3.   The Telemarketing ID Class Is Overly Broad Because It Includes Individuals Who Received Communications Sent Through Carriers That Do Not Possess Text-Message Caller ID Capabilities. ........................... 11

   B.   The Proposed Class Members Lack Commonality. ..................................... 12

   C.   Both Classes Are Uncertifiable Because They Are Not Defined On Objective Criteria And Instead Depend On Resolution of Merits Inquiries. ................. 14

V.   CONCLUSION ................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*,

    2018 WL 488257 (N.D. Ill. Jan. 18, 2018) ............................................................. 5

*Abdul–Akbar v. McKelvie*,

    239 F.3d 307 (3d Cir.2001) ................................................................................... 9

*Barnes v. Coca-Cola Co.*,

    2025 WL 1027431 (E.D. Cal. Apr. 7, 2025) ...................................................... 6, 8

*Bell Atl. Corp. v. Twombly*,

    550 U.S. 544 (2006) ............................................................................................ 4

*Blades v. Monsanto Co.*,

    400 F.3d 562 (8th Cir.2005) ............................................................................... 13

*Brashear v. Perry Cnty., Ky.*,

    2007 WL 1434876 (E.D. Ky. May 14, 2007) ...................................................... 8

*Broking v. Green Brook Buick GMG Suzuki*,

    2017 WL 3610490 (D.N.J. Aug. 22, 2017) ........................................................ 16

*Brown v. Electrolux Home Products, Inc.*,

    817 F.3d 1225 (11th Cir. 2016) .......................................................................... 15

*Brown v. Nano Hearing Tech Opco, LLC*,

    2024 WL 3367536 (S.D. Cal. July 9, 2024) ..................................................... 7, 8

*Bynum v. Red River Talc, LLC*,

    2026 WL 242063 (D.N.J. Jan. 29, 2026) ............................................................ 4

*Byrd v. Aaron's Inc.*,

    784 F.3d 154 (3d Cir. 2015) ............................................................................... 14

*Daniel v. Five Stars Loyalty, Inc.*,

    2015 WL 7454260 (N.D. Cal. Nov. 24, 2015) ................................................... 16

*de Lacour v. Colgate-Palmolive Co.*,

    338 F.R.D. 324 (S.D.N.Y. 2021) ........................................................................ 14

*Dobrek v. Phelan*,

    419 F.3d 259 (3d Cir.2005) ............................................................................... 10

*DuRocher v. Nat'l Collegiate Athletic Ass'n,*
2015 WL 1505675 (S.D. Ind. Mar. 31, 2015) ........................................................... 6

*Ebert v. Gen. Mills, Inc.*,
823 F.3d 472 (8th Cir. 2016) ................................................................................... 12

*Fields v. Mobile Messengers Am., Inc.*,
2013 WL 6073426 (N.D. Cal. Nov. 18, 2013) ........................................................... 8

*Garlanger v. Verbeke,*
223 F. Supp. 2d 596 (D.N.J. 2002) ........................................................................... 3

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ................................................................................................. 12

*Harleysville Mut. Ins. Co. v. GE Reinsurance Corp.*,
2002 WL 922148 (E.D. Pa. May 6, 2002) ................................................................. 3

*In re Armstrong World Indus., Inc.,*
432 F.3d 507 (3d Cir. 2005) ..................................................................................... 9

*In re Philadelphia Newspapers, LLC,*
418 B.R. 548 (E.D. Pa. 2009) .............................................................................. 9, 10

*Jamison v. First Credit Servs.*,
2013 WL 387217 (N.D. Ill. July 29, 2013) ................................................................ 7

*Kamm v. California City Dev. Co.*,
509 F.2d 205 (9th Cir. 1975) ..................................................................................... 4

*Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*,
571 F.3d 672 (7th Cir. 2009) ................................................................................. 5, 6

*Lackawanna Chiropractic P.C. v. Tivity Health Support, LLC*,
2019 WL 7195309 (W.D.N.Y. Aug. 29, 2019) .......................................................... 5

*Leon v. Loandepot.com, LLC,*
2025 WL 2632396 (C.D. Cal. Aug. 22, 2025) ........................................................... 7

*Manning v. Boston Med. Ctr. Corp.*,
725 F.3d 34 (1st Cir. 2013) ....................................................................................... 3

*Martin v. Struthers*,
319 U.S. 141 (1943) ................................................................................................. 11

*Martinez v. TD Bank USA*, N.A.,
  2017 WL 2829601 (D.N.J. June 30, 2017) ............................................................................ 7

*McElhaney v. Eli Lilly & Co.*,
  93 F.R.D. 875 (D.S.D. 1982) .................................................................................................. 5

*McInerney v. Moyer Lumber and Hardware, Inc.*,
  244 F. Supp. 2d 393 (E.D. Pa. 2002) .................................................................................... 3

*Messner v. Northshore Univ. Health Sys.*,
  699 F.3d 802 (7th Cir. 2012) ................................................................................................ 13

*Mira v. Nuclear Measurements Corp.*,
  107 F.3d 466 (7th Cir.1997) .................................................................................................. 15

*MSP Recovery Claims v. Plymouth Rock Assur. Corp., Inc.*,
  404 F. Supp. 3d 470 (D. Mass. 2019) ................................................................................... 15

*PFT of Am., Inc. v. Tradewell, Inc.*,
  1999 WL 179358 (S.D.N.Y. Mar. 31, 1999) ........................................................................ 5

*Pilgrim v. Universal Health Card, LLC*,
  660 F.3d 943 (6th Cir.2011) .................................................................................................. 3

*Rikos v. Procter & Gamble Co.*,
  799 F.3d 497 (6th Cir. 2015) ................................................................................................. 14

*Rivera v. Harvest Bakery Inc.*,
  312 F.R.D. 254 (E.D.N.Y. 2016) ........................................................................................... 5

*Rombough v. Robert D. Smith Ins. Agency, Inc.*,
  2022 WL 2713278 (N.D. Iowa June 9, 2022) ................................................................... 9, 13

*Saf–T–Gard Int'l, Inc. v. Wagener Equities, Inc.*,
  251 F.R.D. 312 (N.D. Ill. 2008) ............................................................................................ 15

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*,
  821 F.3d 992 (8th Cir. 2016) ................................................................................................. 14

*Semenko v. Wendy's Int'l, Inc.*,
  2013 WL 1568407 (W.D. Pa. Apr. 12, 2013) ....................................................................... 4

*Smith v. Microsoft Corp.*,
  297 F.R.D. 464 (S.D. Cal. 2014) ........................................................................................... 8

*Sowders v. Scratch Fin., Inc.*,
   2023 WL 7525900 (S.D. Ohio Nov. 14, 2023) ........................................................ 15

*Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*,
   2014 WL 2946421 (W.D. Ky. June 30, 2014) ......................................................... 5

*St. Louis Heart Ctr., Inc. v. Vein Centers for Excellence, Inc.*,
   2017 WL 2861878 (E.D. Mo. July 5, 2017) ..................................................... 14, 15

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ................................................................................... 8

*Ung v. Universal Acceptance Corp.*,
   319 F.R.D. 537 (D. Minn. 2017) ...................................................................... 7

*United States v. Ron Pair Enters., Inc.*,
   489 U.S. 235 (1989) ...................................................................................... 10

*Vega v. T-Mobile USA, Inc.*,
   564 F.3d 1256 (11th Cir. 2009) ..................................................................... 12

*Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.*,
   274 F.R.D. 229 (S.D. Ill. 2011) ....................................................................... 5

*Walewski v. Zenimax Media, Inc.*,
   502 F. App'x 857 (11th Cir. 2012) ................................................................. 5

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................. 3, 13, 14

*Warnick v. Dish Network LLC*,
   301 F.R.D. 551 (D. Colo. 2014) ...................................................................... 7

*Weister v. Vantage Point AI, LLC*,
   2022 WL 3139373 (M.D. Fla. Aug. 3, 2022) ................................................. 16

*Yagman v. Allianz Ins.*,
   2015 WL 5553460 (C.D. Cal. May 11, 2015) ................................................. 4

**Statutes and Rules**

47 C.F.R. § 64.1200 ........................................................................... 7, 10, 13

47 U.S.C. § 227 .................................................................................................. 6

Fed. R. Civ. P. 12 .............................................................................................. 3

Fed. R. Civ. P. 23 .............................................................................................. 3

*In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,

    18 FCC Rcd. 14014 (2003) ................................................................................................ 10

Defendant EverQuote, Inc. ("EverQuote"), by and through its undersigned counsel, hereby moves this Honorable Court for an Order striking the class allegations of the Plaintiff James E. Shelton's ("Plaintiff") Complaint.

## I. <u>INTRODUCTION</u>

Plaintiff seeks to represent two facially uncertifiable classes in a manner that discovery cannot cure. This Court should strike the proposed class definitions here and now, rather than subjecting the parties and the Court to the expense of valuable time and resources on discovery and other motion practice.

The National DNC Class is fatally overly broad because it fails to exclude individuals who have no viable claim under the TCPA. First, the definition makes no attempt to carve out the significant number of individuals who either consented to receive messages or who had an established business relationship ("EBR") with EverQuote. Second, the class definition ignores the plain text of the regulation by sweeping in individuals who did not personally register their telephone numbers on the National DNC Registry. Including these exempt individuals ensures that a massive portion of the proposed class lacks standing. This defect also destroys the requisite Rule 23 commonality, as individualized mini-trials into personal registration, consent, and EBR status would overwhelm any potential common questions.

The Telemarketing Caller ID Class suffers from similar fatal defects. It is overly broad, and its members lack basic Rule 23 commonality because it attempts to impose liability for text messages sent through telecommunications carriers that physically do not possess text-message caller ID capabilities, completely ignoring 47 C.F.R. § 64.1601(e)(1)'s express statutory safe harbor.

Finally, both proposed class definitions are impermissibly merits-based. Membership in both the National DNC Class and the Telemarketing Caller ID Class explicitly depends on whether an individual received "telemarketing" messages. This requires the Court to make a substantive liability determination on the content of every single call and text message just to identify who is in the class—a prohibited practice that violates the rule against one-way intervention.

Because these fatal flaws make certification impossible as a matter of law, the class allegations should be stricken in their entirety.

## II. FACTUAL ALLEGATIONS

Plaintiff alleges that EverQuote sent at least fourteen unconsented to telemarketing text messages between October 2025 and November 2025 to his residential cellular phone number that he registered on the National DNC Registry. Complaint ("Compl.") at ¶¶ 16-23. Plaintiff also alleges that EverQuote utilized a carrier that provided Caller ID Name ("CNAM") functionality, but that EverQuote failed to transmit an accurate CNAM reflecting its own name. *Id*. at ¶¶ 25-27.

Based on those allegations, Plaintiff seeks to represent the following nationwide classes:

**National DNC Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call or text message call from or on behalf of Defendant encouraging the purchase of its goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

**Telemarketing Caller ID Class**: All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls or text message calls in a 12-month period, (3) without the transmission of caller identification information that included either CPN or ANI and the Defendant or telemarketer's name, (4) within the four years prior to the filing of the Complaint.

*Id*. at ¶ 38.

## III. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading...any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber and Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002) (citing *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002)). While motions to strike are not favored, they will be granted where "the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Id.* (citing *Harleysville Mut. Ins. Co. v. GE Reinsurance Corp.*, No. 02-171, 2002 WL 922148, *6-7 (E.D. Pa. May 6, 2002)).

A class action complaint must plead "the existence of a group of putative class members whose claims are susceptible of resolution on a classwide basis." *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "If it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations." *Id.* (citing *Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943, 949 (6th Cir.2011) (affirming the district court's judgment striking the class allegations prior to close of discovery and motion to certify class)).

Decisions on class certification should be made "[a]t an early practicable time after a person sues." Fed. R. Civ. P. 23(c)(1)(A); *see also Pilgrim*, 660 F.3d at 949 ("[E]ither plaintiff or defendant may move for a determination of whether the action may be certified under Rule 23(c)(1).") (citations omitted).

3

Striking a class definition at the pleadings stage is particularly appropriate when it is facially uncertifiable in a manner that discovery cannot resolve. *Bynum v. Red River Talc, LLC*, No. 24-7065 (MAS) (RLS), 2026 WL 242063, at *3 (D.N.J. Jan. 29, 2026) ("A district court may strike class action allegations without permitting discovery or waiting for a certification motion where the complaint and any affidavits clearly demonstrate that the plaintiff cannot meet the requirements for a class action."). "District courts have broad discretion to control the class certification process, and '[w]hether or not discovery will be permitted ... lies within the sound discretion of the trial court.'" *Semenko v. Wendy's Int'l, Inc.*, No. 2:12-CV-0836, 2013 WL 1568407, at *3 (W.D. Pa. Apr. 12, 2013) (quoting *Kamm v. California City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975)).

Indeed, courts have recognized the dangers of allowing a facially uncertifiable class to proceed to discovery. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2006) (emphasizing the expense and burden of discovery in class actions and stressing that neither "careful case management," nor "careful scrutiny of [the] evidence at the summary judgment stage," will protect defendants from incurring enormous discovery costs) (citation omitted); *see also Yagman v. Allianz Ins.*, No. LACV1500921JAKJCX, 2015 WL 5553460, at *4 (C.D. Cal. May 11, 2015) (failing to strike plaintiff's class allegations "would inject significant uncertainty as to the scope of discovery and other pretrial proceedings").

## IV. ARGUMENT—PLAINTIFF'S PROPOSED CLASS DEFINITIONS MUST BE STRICKEN BECAUSE THEY ARE FACIALLY UNCERTIFIABLE AS A MATTER OF LAW.

### A. The Proposed Classes Are Overly Broad As Defined.

A class is overbroad and uncertifiable where it contains a large number of potential members who have "no grievance" with the defendant. *Kohen v. Pac. Inv. Mgmt. Co. LLC &*

*PIMCO Funds*, 571 F.3d 672, 678 (7th Cir. 2009) ("[A] class should not be certified if it contains a great many of persons who have suffered no injury."); *Walewski v. Zenimax Media, Inc.,* 502 F. App'x 857, 861 (11th Cir. 2012) (affirming denial of class certification where proposed class definition "impermissibly include[d] members who have no cause of action"); *Lackawanna Chiropractic P.C. v. Tivity Health Support, LLC*, No. 18-CV-00649-LJV-JJM, 2019 WL 7195309, at *3 (W.D.N.Y. Aug. 29, 2019), report and recommendation adopted, No. 18-CV-649, 2019 WL 7194525 (W.D.N.Y. Dec. 26, 2019) (citing *Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) ("[The plaintiff's] proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant] knowing the [defendant] would call those numbers to present special commercial offers. They have no grievance with the [defendant], and ... their inclusion in the proposed class definition renders it overbroad and the class unfit for certification")); *Rivera v. Harvest Bakery Inc.*, 312 F.R.D. 254, 268 (E.D.N.Y. 2016) (holding that the proposed class definition was overbroad). This is true because some class members do not "share a viable claim." *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, No. 16 C 2513, 2018 WL 488257, at *4 (N.D. Ill. Jan. 18, 2018); *see Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489-TBR, 2014 WL 2946421, at *10 (W.D. Ky. June 30, 2014) (holding the class definition is overbroad in that it includes persons who have no claim under the TCPA.); *McElhaney v. Eli Lilly & Co.*, 93 F.R.D. 875, 878 (D.S.D. 1982) ("The definition of a class cannot be so broad as to include individuals who are without standing to maintain the action on their own behalf."). And where overbreadth is apparent at the pleadings stage, a class is properly stricken. *PFT of Am., Inc. v. Tradewell, Inc.*, No. 98 Civ 6413, 1999 WL 179358, at *1 (S.D.N.Y. Mar. 31, 1999) (striking class claims where the class was not sufficiently defined).

Allowing an overbroad class to proceed past the pleadings stage creates an inherent unfairness to the defendant in view of the "in terrorem character of a class action." *Kohen*, 571 F.3d at 678; *see also Barnes v. Coca-Cola Co.*, No. 1:22-CV-01511-KJM-EPG, 2025 WL 1027431, at *5 (E.D. Cal. Apr. 7, 2025) ("Coca-Cola—like all defendants facing suit—is 'entitled to know the class definition being alleged against them.'") (citing *DuRocher v. Nat'l Collegiate Athletic Ass'n*, No. 13-01570, 2015 WL 1505675, at *7 (S.D. Ind. Mar. 31, 2015)). This is particularly true in TCPA class actions where the statute provides for a minimum of $500 in statutory damages per violation. 47 U.S.C. § 227(b)(3); 47 U.S.C. § 227(c)(5); *see also Kohen,* 571 F.3d at 677-78 ("When the potential liability created by a lawsuit is very great, even though the probability that the plaintiff will succeed in establishing liability is slight, the defendant will be under pressure to settle rather than to bet the company, even if the betting odds are good.") (citations omitted).

Here, the class definitions are overly broad because they encompass individuals who lack a valid claim against EverQuote. The National DNC Class is overly broad because it includes individuals who consented to receive messages or had EBR with EverQuote and individuals who did not personally register their telephone numbers on the National DNC Registry. The Telemarketing Caller ID Class is overly broad because it includes individuals who were called on behalf of EverQuote where the caller's carrier does not have caller ID capabilities.

As such, striking the class definitions at this stage is warranted for each of these reasons alone.

### 1. The National DNC Class Is Overly Broad Because It Includes Individuals Who Consented To Receive Calls Or Had An Established Business Relationship With EverQuote.

Courts routinely reject class definitions that include members for whom issues of consent arise. *See Leon v. Loandepot.com, LLC,* No. 2:25-CV-01787-JLS-AGR, 2025 WL 2632396, at *3 (C.D. Cal. Aug. 22, 2025) (striking class as overly broad because it included individuals who consented and had an EBR); *see also Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537, 540 (D. Minn. 2017) ("the issue of consent makes it nigh impossible to determine the members of the putative class without a member-by-member analysis and individualized proof….The 'disparate factual circumstances' regarding each class member's consent simply 'prevents the class from being cohesive and thus [renders] it unable to be certified under Rule 23(b)(2).'"); *Brown v. Nano Hearing Tech Opco, LLC*, No. 3:24-CV-00221-BTM-JLB, 2024 WL 3367536, at *8-9 (S.D. Cal. July 9, 2024) (finding that the plaintiff's class was flawed because it included individuals who may have consented to receiving calls from the defendant, thereby lacking standing under the TCPA); *see also Martinez v. TD Bank USA*, N.A., No. CV 15-7712(JBS/AMD), 2017 WL 2829601, at *12 (D.N.J. June 30, 2017) (holding that a TCPA class was not ascertainable because it would require mini trials to identify individuals who did not provide prior express consent); *see also Warnick v. Dish Network LLC*, 301 F.R.D. 551, 559 (D. Colo. 2014) (denying class certification in a TCPA case and finding that the class was overbroad and not sufficiently ascertainable where, among other problems, one sub-class included persons called with consent); *Jamison v. First Credit Servs.*, No. 12 C 4415, 2013 WL 387217, at *8 (N.D. Ill. July 29, 2013).

Under the TCPA's implementing regulations, the term "telephone solicitation" is defined to expressly excludes calls made with "prior express invitation or permission" ("consent") or made to individuals who have an EBR with the caller. *See* 47 C.F.R. § 64.1200(f)(15). And because the definition of "telephone solicitation" is defined to exclude calls made with consent and made to individuals who have an EBR with the caller, the absence of consent and an EBR

are essential elements that a plaintiff has the burden of proving. *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 471 (S.D. Cal. 2014) ("The absence of express prior consent, however, is one of the three elements of a TCPA claim, which Plaintiff bears the burden of satisfactorily establishing for the Court."); *Fields v. Mobile Messengers Am., Inc.*, No. C 12-05160 WHA, 2013 WL 6073426, at *3 (N.D. Cal. Nov. 18, 2013) ("Because our court of appeals has stated that consent is an element of a prima facie TCPA claim, this order is duty-bound to place the burden on plaintiffs to prove a lack of prior express consent.").

Consequently, individuals who consented or had an EBR with EverQuote—including Plaintiff, himself—suffered no legal injury and lack Article III standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). "[A] proposed class m[a]y be deemed overly broad if it 'would include members who have not suffered harm at the hands of the [d]efendant and are not at risk to suffer such harm.'" *Brashear v. Perry Cnty., Ky.,* No. 6:06-143 DCR, 2007 WL 1434876, at *2 (E.D. Ky. May 14, 2007) (citation omitted).

Here, Plaintiff's proposed National DNC Class broadly captures anyone who received a telemarketing call or text, without carving out those who provided consent or had an existing business relationship with EverQuote. Because the definition necessarily sweeps in uninjured individuals, it is fatally overbroad. *See Barnes*, 2025 WL 1027431, at *5 ("[T]he proposed class very likely includes persons who suffered no injury based on a call from [the defendant], and the court therefore must consider whether their presence means that the class definition is fatally overbroad.") (quotation marks omitted) (citation omitted); *Brown*, 2024 WL 3367536, at *8 (striking class allegations because the TCPA expressly precludes claims by consenting individuals, meaning the class "necessarily includes any individuals who have consented" and "would also lack standing").

Because Plaintiff's National DNC Class fails to exclude these individuals, it includes a multitude of people who were not harmed and possess no viable claim, making it incurably overbroad. The Court should strike this class definition.

### 2. The National DNC Class Is Overly Broad Because It Improperly Includes Individuals Who Have Not Personally Registered Their Telephone Numbers On The National DNC Registry.

The threshold requirement for bringing a claim under the DNC provisions is clear and unambiguous: relief is only for a "residential telephone subscriber **who has registered his or her telephone number**." 47 C.F.R. § 64.1200(c) (emphasis added).

In *Rombough*, the Court confirmed that this language must be applied as written, holding that personal registration of the phone number on the National DNC Registry is a prerequisite to standing. *Rombough v. Robert D. Smith Ins. Agency, Inc*., No. 22-CV 15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022). The court in *Rombough* explained that "[t]he plain language of Section 64.1200(c) indicates that Section 227(c)(5)'s private action exists only for a residential telephone subscriber *who has registered his or her telephone number* on the national do-not-call registry." *Id*. (emphasis added). The regulation's use of the phrase "registered his or her telephone number" plainly contemplates that the person bringing suit must have been the one to place the number on the registry. *Id*.

Where a statute or regulation's language is plain, courts must give effect to that plain meaning. *In re Philadelphia Newspapers, LLC*, 418 B.R. 548, 559 (E.D. Pa. 2009), *aff'd,* 599 F.3d 298 (3d Cir. 2010), *as amended* (May 7, 2010) ("This plain meaning rule dictates that where the meaning of the relevant statutory language is clear then no further inquiry is required." (citing *In re Armstrong World Indus., Inc.,* 432 F.3d 507, 512 (3d Cir. 2005); *Abdul–Akbar v. McKelvie,* 239 F.3d 307, 313 (3d Cir.2001) (en banc)).

For interpreting a statute, a court must first "determine[s] whether the language at issue has a plain and unambiguous meaning." *In re Philadelphia Newspapers, LLC*, 418 B.R. at 559 (quoting *Dobrek v. Phelan,* 419 F.3d 259, 263 (3d Cir.2005)). Here, the regulation's text expressly mandates personal registration. 47 C.F.R. § 64.1200(c). The explicit use of the personal pronouns "his or her" combined with the active verb phrase "has registered" leaves no room for alternate interpretations. *Id*. It definitively restricts the private right of action to the specific individual who took the affirmative step to place the number on the registry, legally foreclosing claims by subsequent subscribers who merely inherited a previously registered number.

Second, if the statutory language appears to be unambiguous, a court must look beyond that plain language where a literal interpretation would lead to an absurd result, or would otherwise produce a result "demonstrably at odds with the intentions of the drafters." *In re Philadelphia Newspapers, LLC*, 418 B.R. at 559 (quoting *United States v. Ron Pair Enters., Inc*., 489 U.S. 235, 242 (1989)). Applying the literal, plain-text interpretation of § 64.1200(c) does not lead to an absurd result, nor does it contradict the drafters' intentions. To the contrary, strictly enforcing the personal registration requirement perfectly aligns with the statute's design. The DNC framework is built entirely upon individual consumer choice. It is neither absurd nor contrary to legislative intent to require a new subscriber to assert their own privacy preferences rather than allowing them to automatically inherit the distinct, personal privacy choices of a stranger who previously held the phone number.

Thus, standing under the TCPA depends upon the individual's own affirmative act of placing the number on the DNC Registry. Legislative history indicates that Congress envisioned consumers proactively placing their numbers on the DNC list to obtain protection. *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14, 038-39 (2003).

10

Nothing suggests that the protections flow automatically to a new subscriber who did not personally register the number. This interpretation is also consistent with First Amendment principles underlying the DNC framework, which empower individuals to opt in to restrictions on protected speech. *See Martin v. Struthers*, 319 U.S. 141, 148-49 (1943).

Plaintiff's proposed National DNC Class definition ignores this mandatory prerequisite. The class is improperly defined to include countless individuals who have no standing because they merely acquired phone numbers that were previously registered by someone else. By including those who never performed the affirmative act of registering their own number, the definition contravenes the plain language of 47 C.F.R. § 64.1200(c). Because the National DNC Class definition fails to limit membership to individuals who personally registered their telephone numbers, it necessarily encompasses numerous individuals with no standing to sue. This overbreadth warrants striking the class allegations.

### 3. *The Telemarketing ID Class Is Overly Broad Because It Includes Individuals Who Received Communications Sent Through Carriers That Do Not Possess Text-Message Caller ID Capabilities.*

The plain text of the Caller ID transmission rule, 47 C.F.R. § 64.1601(e)(1), requires the transmission of a telemarketer's CNAM only "when available by the telemarketer's carrier." By including this limiting language, the FCC explicitly shielded telemarketers from liability when their telecommunications carrier does not technologically support or provide CNAM transmission for the specific type of communication being sent. The law does not require a telemarketer to perform a technological impossibility.

Here, Plaintiff's proposed class definition sweeps in any person who received a text message without the transmission of a CNAM from EverQuote "or a third-party acting on behalf of" EverQuote. Compl. at ¶ 38. However, as demonstrated in EverQuote's Motion to Dismiss,

EverQuote's own carrier—Twilio, Inc.—does not possess the technological capability to transmit CNAM data for SMS text messages. *See* Motion to Dismiss 12(b)(6).

If EverQuote's own provider lacks this capability for SMS CNAM, it is likely that any other third-party vendors allegedly texting "on behalf of" EverQuote would similarly utilize telecommunications carriers that cannot physically transmit CNAM data. Yet the proposed class definition makes no distinction. It blindly lumps together all text messages lacking a CNAM, completely failing to exclude messages sent by third parties whose carriers fall squarely within the regulation's express safe harbor.

As a result, the proposed class necessarily encompasses massive numbers of individuals who received messages for which EverQuote and its alleged third-party callers are completely shielded from liability. Because these individuals suffered no legal wrong and possess no viable claim under 47 C.F.R. § 64.1601(e)(1), their inclusion renders the class definition incurably overbroad.

Therefore, the Court should strike this class definition.

## B. The Proposed Class Members Lack Commonality.

"The commonality requirement [of Federal Rule of Civil Procedure 23] demands only that there be 'questions of law or fact common to the class.'" *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (citation omitted). A class that lacks commonality is also not certifiable. *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 477-478 (8th Cir. 2016) ("Under Rule 23(a), a district court may certify a class only if it 'is satisfied, after a rigorous analysis,' that the four threshold requirements are met" which includes "commonality of legal or factual questions.") (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that

varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Messner v. Northshore Univ. Health Sys*., 699 F.3d 802, 815 (7th Cir. 2012) (quoting *Blades v. Monsanto Co*., 400 F.3d 562, 566 (8th Cir.2005)). In other words, there must be at least one "common contention" that "is central to the validity" of the claims and that can be resolved "in one stroke." *Dukes,* 564 U.S. 338 at 349-50.

Here, the same defects that render EverQuote's class definitions overly broad also cause the class members to lack the requisite commonality. First, the National DNC Class lacks commonality because it impermissibly includes individuals who provided the requisite consent to receive messages from EverQuote. Whether a class member provided prior express consent is a classic individualized issue that depends on the specific interactions between that person and EverQuote, thereby splintering any potential common question. Furthermore, determining the existence of EBRs with class members defeats commonality for the National DNC Class because it requires a member-specific analysis of past transactions or inquiries between each individual and EverQuote, precluding a common resolution.

Second, for the National DNC Class, standing itself is an individual issue. The Court would have to determine whether each class member personally registered their telephone number on the National DNC Registry—an inquiry which cannot be answered with common proof. *See* 47 C.F.R. § 64.1200(c); *Rombough*, 2022 WL 2713278, at *2.

Finally, the Telemarketing Caller ID class lacks commonality because determining liability requires an individual analysis of the technological capabilities of the specific telecommunications carrier utilized to send each message. It is an inherently individualized, factual question whether a

specific carrier possessed the technology to transmit CNAM data for text messages, preventing resolution of the claims "in one stroke." *Dukes*, 564 U.S. at 350.

Because the claims will depend on evidence that varies from member to member, commonality is absent in a manner that discovery cannot cure. As such, the class allegations must be stricken.

### C. Both Classes Are Uncertifiable Because They Are Not Defined On Objective Criteria And Instead Depend On Resolution of Merits Inquiries.

A class must be defined using administratively feasible, objective-based criteria. *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016) (citing *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015) (For "a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria."); *Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015), *as amended* (Apr. 28, 2015) (explaining that a class must be defined with reference to objective criteria in order to be ascertainable); *see also de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 339 (S.D.N.Y. 2021), *lv. to app. den*., No. 21-1234, 2021 WL 5443265 (2d Cir. Sept. 16, 2021) ("[A] class must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member, and must be defined by objective criteria that are administratively feasible, such that identifying its members would not require a mini-hearing on the merits of each case.") (internal quotation marks omitted) (citation omitted). A class defined based upon the merits of a claim is simply not certifiable. *St. Louis Heart Ctr., Inc. v. Vein Centers for Excellence, Inc*., No. 4:12 CV 174 CDP, 2017 WL 2861878, at *5-6 (E.D. Mo. July 5, 2017) (decertifying class where class was based on objective criteria and therefore, not ascertainable).

14

This is so because merits determinations must not be made at the certification stage—yet a class defined based upon the merits of a claim assures that all members of a class have already won on a critical substantive issue. *MSP Recovery Claims v. Plymouth Rock Assur. Corp., Inc.*, 404 F. Supp. 3d 470, 485 (D. Mass. 2019); *see also Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016) (explaining that a "district court can consider the merits 'only' to the extent 'they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'") (citation omitted). A class must therefore be ascertainable without inquiring into the merits of the case. *St. Louis Heart Ctr., Inc.*, 2017 WL 2861878, at *5 ("There is no objective criterion available to accurately identify potential class members, making the class unascertainable."); *Saf–T–Gard Int'l, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 314 (N.D. Ill. 2008) ("The court must assess the appropriateness of class certification without regard to the merits of the case.") (quoting *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474 (7th Cir.1997)); *Sowders v. Scratch Fin., Inc.*, No. 3:23-CV-56, 2023 WL 7525900, at *9-10 (S.D. Ohio Nov. 14, 2023) (granting the defendant's motion to strike the plaintiff's class allegations where the proposed class definition included those who received a fax "not including the opt-out notice required by 47 U.S.C. § 227(b)(2)(D)" because this definition improperly predicated class membership on the ultimate legal conclusion of the claim.).

Here, the proposed National DNC Class and Telemarketing Caller ID Class definitions are impermissibly defined based upon the merits instead of objective criteria because they only include individuals who received "telemarketing" messages. To determine who is in the class, the Court would first need to review the content of the message for each text sent to class members to assess whether the communication actually constitutes "telemarketing." These plainly are merit determinations. *Weister v. Vantage Point AI, LLC*, No. 8:21-CV-1250-SDM-AEP, 2022 WL

3139373, at *7-8 (M.D. Fla. Aug. 3, 2022), motion to certify appeal denied, No. 8:21-CV-1250-SDM-AEP, 2022 WL 7026495 (M.D. Fla. Oct. 12, 2022) (considering whether the at-issue calls are "telemarketing" a merits challenge); *Broking v. Green Brook Buick GMG Suzuki*, No. CV151847BRMLHG, 2017 WL 3610490, *5-6 (D.N.J. Aug. 22, 2017) (finding that the at-issue call from the defendant did not violate the TCPA because it did not constitute telemarketing); *Daniel v. Five Stars Loyalty, Inc.*, No. 15-CV-03546-WHO, 2015 WL 7454260, *6-7 (N.D. Cal. Nov. 24, 2015) (dismissing a complaint where the text sent by defendant did not violate the TCPA because it was not telemarketing).

The assumption that any merit has been met by allowing, rather than striking, these class definitions would be highly prejudicial to EverQuote. Thus, this Court should strike the class allegations here and now.

## V. <u>CONCLUSION</u>

For the foregoing reasons, EverQuote respectfully requests the Court strike Plaintiff's class allegations in their entirety.

Dated: February 27, 2026

Respectfully submitted,

*/s/ V. Amanda Witts*
V. Amanda Witts, Esq. (Bar No. 308902)
MITCHELL SANDLER PLLC
2020 K Street NW, Suite 760
Washington, D.C. 20006
(202) 886-5267
v.awitts@mitchellsandler.com

AND

Eric J. Troutman (*pro hac vice* forthcoming)
California Bar No. 229263
Puja J. Amin (*pro hac vice* forthcoming)
California Bar No. 299547

16

Tori L. Guidry (*pro hac vice* forthcoming)
Louisiana Bar No. 37704
TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550
Irvine, California 92618
Telephone: (949) 350-3663
Facsimile: (214) 758-1550
troutman@troutmanamin.com

*Attorney for Defendant EverQuote, Inc.*

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on February 27, 2026, a copy of the foregoing was filed electronically and served by other electronic means on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by e-mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ V. Amanda Witts*
V. Amanda Witts